<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GERALD SCATTAGLIA, JR., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiffs,<br><br>    v.<br><br>MERCEDES-BENZ USA, LLC AND JOHN DOES 1-10,<br><br>    Defendants. | Case No. 2:21-cv-12750 (BRM) (LDW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Mercedes-Benz USA, LLC's ("MBUSA") Motion to Dismiss Plaintiffs' Amended Class Action Complaint for Failure to State a Claim. (ECF No. 8.) Plaintiffs filed an opposition this motion (ECF No. 16), and MBUSA filed a reply (ECF No. 17). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, MBUSA's motion is **GRANTED IN PART** and **DENIED IN PART**.

I.    **BACKGROUND**

For the purposes of this Motion to Dismiss, the Court "accept[s] as true all factual allegations in the [Complaint] and draw[s] all inferences from the facts alleged in the light most favorable to" Plaintiffs. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). The Court also considers any

"document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

In this putative class action, Plaintiffs seek damages against MBUSA for concealing defects in a line of Mercedes-Benz vehicles which manifest when the vehicles fail to start. (Am. Compl. (ECF No. 1-2) at 6–7, ¶¶ 15–22.[1]) MBUSA is a Delaware limited liability company with a principal place of business in Georgia. (Notice of Removal (ECF No. 1) ¶ 11.) MBUSA's sole member, Daimler North America Corporation, is a citizen of Delaware and Michigan. (*Id.* ¶ 13.) Plaintiffs propose a class of persons who purchased or leased a Mercedes-Benz 2021 or older 450 GLE vehicle that they purchased, leased, or registered in New Jersey. (ECF No. 1-2 at 44, ¶ 174.) The Amended Complaint alleges "[t]he class is believed to number at least hundreds, if not thousands, of persons," and, "[u]pon information and belief, during the relevant time periods, over one hundred of the class vehicles, if not thousands of class vehicles, were sold, leased or registered in New Jersey." (*Id.* at 45, 49, ¶¶ 184, 208.) The named Plaintiff Joseph Scattaglia is a New York resident who purchased a Mercedes-Benz 2021 GLE450W4 on or about October 29, 2020 in New Jersey. (*Id.* at 2, 5, 15, ¶¶ 1, 10, 56.)

### A.    Alleged Defects

Plaintiffs allege defects in the vehicles' 48-volt battery and/or electric systems cause the vehicle to fail to start. (*Id.* at 13, 15, ¶¶ 49, 57–58.) Scattaglia claims, following his purchase, he experienced problems with his vehicle's operation, and it has undergone three repair attempts with

---

[1] Because the paragraphs in the Amended Complaint are not consecutively numbered, the Court cites to both the page and paragraph numbers.

a cumulative 47 days at MBUSA's franchise dealership for attempts to repair the "no-start condition and/or electrical malfunction." (*Id.* at 17, ¶¶ 65–68.) Specifically, Scattaglia alleges:

(1) Two weeks after he took delivery of the vehicle, it had to be towed to the dealership for repair because the passenger side experienced a loss of power. (*Id.* at 17–18, ¶ 69.)

(2) One month after he purchased the vehicle, it died while parked in his garage, and it was again towed to the dealership for repair. (*Id.* at 18, ¶¶ 70–71.) He claims the service department staff told him the 48-volt battery caused the problem. (*Id.* at ¶ 72.) After this second repair, he noticed the vehicle's dashboard display experienced a power failure. (*Id.* at ¶ 73.)

(3) In April 2021, the vehicle died and was towed to the dealership a third time, and service department staff again told him the 48-volt battery caused the problem. (*Id.* at ¶¶ 74–75.)

The Amended Complaint contains no allegations Scattaglia's vehicle continues to experience any problems nor allegations he paid any money out-of-pocket for the claimed repairs.

In addition to asserting Scattaglia's experience with his vehicle, Plaintiffs point to three categories of information as evidence of a defect. First, they assert the New Jersey Department of Consumer Affairs' (the "DCA") list of vehicles branded as "lemons" under the New Jersey Lemon Law (the "NJLL"), N.J. Stat. Ann. § 56:12-29 *et seq.*, includes approximately twenty 2020 450 GLE vehicles as of April 1, 2021. (*Id.* at 6–7, ¶ 20.) Next, they cite several posts allegedly written by consumers on online vehicle forums describing "no-start" and electrical issues with their 450 GLEs resulting in tows and trips to the dealership for warranty repairs. (*Id.* at 11–14, ¶¶ 37, 43–50.) Plaintiffs claim each time a vehicle is brought to a dealership for a warranty repair, the dealership notifies MBUSA of the issue that is the subject of the repair. (*Id.* at 21, ¶ 82.) Third,

3

they refer to technical service bulletins (the "TSBs") issued by MBUSA for problems related to "no-start" issues and referring to problems with the 48-volt battery. (*Id*. at 11, ¶¶ 38–42.) Plaintiffs allege that MBUSA was aware of the defects at least as early as January 2020 based on these sources of information. (*Id.* at 6, ¶ 19.)

Plaintiffs claim the selling dealerships issued warranties to them with coverage for four years or 50,000 miles for "basic" components pursuant to which they were entitled to repairs for problems with the operation of the vehicle. (*Id.* at 15, 17, ¶¶ 59, 64.) They allege the putative class members presented the vehicles to the dealerships for repair during the warranty period, and the dealerships attempted to repair the vehicles, but the dealerships were unable to repair or correct the vehicles within a reasonable time. (*Id.* at 19, ¶¶ 80–81.)

Plaintiffs claim they would not have purchased the vehicles had they known of the defects. (*Id.* at ¶ 78.) Plaintiffs allege the defects "substantially impair[] the use, value or safety" of the vehicles. (*Id.* at ¶ 79.) Plaintiffs contend, "[g]iven the need to have the vehicle towed and its lack of reliability, the problems have significantly impaired [their] use of the vehicle and plaintiffs believe the vehicle is unsafe and plaintiffs' confidence in the vehicle is shaken." (*Id.* at 20, ¶ 85.) Plaintiffs claim the vehicle's repair history is a "permanent blemish" on the vehicles' value, which is less than if the vehicles had no problems. (*Id.* at ¶¶ 86–87.)

### B.   Procedural Background

Plaintiffs commenced this action on May 7, 2021 in the Superior Court of New Jersey, Middlesex County Vicinage. (ECF No. 1 ¶ 1.) On May 10, 2021, Plaintiffs filed an Amended Complaint. (*Id.* ¶ 2.) The Amended Complaint alleges five causes of action against MBUSA: violations of the NJLL (Count 1); violations of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq.*, (Count 2); breach of express warranty and violations

of the Magnuson-Moss Warranty Act (the "MMWA"), 15 U.S.C. § 2301, *et seq*. (Count 3); breach of implied warranty of merchantability and violation of the MMWA (Count 4) (ECF No. 1-2 at 51–65, ¶¶ 226–94). The Amended Complaint contains a fifth count against the Doe defendants alleging against them the same claims Plaintiffs assert against MBUSA. (*Id.* at 65–66, ¶¶ 295–97.)

On June 18, 2021, MBUSA filed a Notice of Removal based on (1) federal diversity jurisdiction under 28 U.S.C. § 1332(a) and (2) federal diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (ECF No. 1.) On August 13, 2021, MBUSA filed the Motion to Dismiss. (ECF No. 8.) On September 7, 2021, Plaintiffs filed an opposition to the motion. (ECF No. 16.) On September 23, 2021, MBUSA filed a reply. (ECF No. 17.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1) because standing is a matter of jurisdiction. *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000); *see St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F. 3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("[W]e must

not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.")).

When a party moves to dismiss pursuant to Rule 12(b)(1), "the court must accept as true all material allegations of the complaint and construe that complaint in favor of the nonmoving party." *New Hope Books, Inc.*, 82 F. Supp. 2d at 324 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Nevertheless, on a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F. 3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). However, "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage. *Lujan*, 504 U.S. at 561.

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citing *Lujan*, 504 U.S. at 560–61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id*. (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

As in *Spokeo*, "[t]his case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements. *Id*. at 1547 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be

6

'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (citations omitted). "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (explaining that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term — 'real,' and not 'abstract.'"). "Concreteness, therefore, is quite different from particularization." *Id.*

In *Spokeo*, the Supreme Court held intangible injuries can be concrete and, under certain circumstances, the risk of real harm can also satisfy the requirement of concreteness. *Id.* at 1549. However, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* As such, a plaintiff may "not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")) (additional citation omitted).

### B.      Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 548 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A court is

"not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. To prevent dismissal, all civil complaints must now set out

"sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220).

For allegations sounding in fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard. "A party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### III.   DECISION

#### A.    Article III Standing

Before proceeding to the merits of MBUSA's motion, the Court must resolve the question of jurisdiction. MBUSA argues all claims should be dismissed because Plaintiffs "failed to plausibly plead two of the three required prongs under Article III: (1) a concrete injury in fact and (2) a causal connection between the purported defect and his alleged injury." (Def.'s Mot. Br. (ECF No. 8-1) at 28–30.) Specifically, MBUSA contends Plaintiffs do not allege they suffered any out-of-pocket expenses to repair the vehicles and the alleged defects are vague, undefined, and do

not plausibly establish a defect exists. (*Id.* at 28–29.) In response, Plaintiffs state MBUSA "must show jurisdiction but claim that the Court has none for want of Article III standing[] and plaintiffs agree and want all such claims remanded." (Pls.' Opp. Br. (ECF No. 16) at 3.)

The Court is "under an independent obligation to examine [its] own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *5 FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (second alteration in original) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)); *accord Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013). "Without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869)). Because this duty is not dischargeable, "a federal court cannot simply accept a stipulation of the parties regarding subject matter jurisdiction – whether it be that jurisdiction does or does not exist – without rendering an affirmative finding on that issue." *Katz v. Six Flags Great Adventure, LLC*, Civ. A. No. 18-116, 2018 U.S. Dist. LEXIS 135913, at *13–14 (D.N.J. Aug. 13, 2018) (citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986) ("When . . . Article III limitations are at issue, notions of consent and waiver cannot be dispositive because the limitations serve institutional interests that the parties cannot be expected to protect.")).

### 1.    Injury-in-Fact

MBUSA argues Plaintiffs have failed to demonstrate a "concrete injury in fact" because Plaintiffs do not allege they have suffered any out-of-pocket expenses to repair the vehicles. (ECF No. 8-1 at 28.) However, allegations of out-of-pocket repair expenses are not required to demonstrate a concrete injury in fact. "The injury required for standing purposes is distinct from damages under a particular theory of liability." *Bang v. BMW of N. Am., LLC*, Civ. A. No. 15-6945, 2016 U.S. Dist. LEXIS 166329, at *12 (D.N.J. Dec. 1, 2016) (citing *Braden v. Wal-Mart*

*Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) ("It is crucial . . . not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive."); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 722–23 (5th Cir. 2007) ("Whether recovery for such a claim is permitted under governing law is a separate question; it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264–65 (2d Cir. 2006) ("[A]n injury-in-fact differs from a 'legal interest'; an injury-in-fact need not be capable of sustaining a valid cause of action under applicable tort law.")).

Here, the Amended Complaint alleges the defects "substantially impair[] the use, value or safety" of the vehicles. (ECF No. 1-2 at 19, ¶ 79.) Scattaglia claims during the warranty period, his vehicle was towed to the dealership for repair first because the passenger side experienced a loss of power, then twice more when the vehicle died. (*Id.* at 17–18, ¶¶ 69–75.) He alleges he was unable to use the vehicle he purchased for a total 47 days while it underwent repairs. (*Id.* at 17, ¶ 68.) Plaintiffs' allegations of diminished vehicle value and time spent taking the vehicle to the dealership for repairs are sufficient to demonstrate Article III standing. *See Bang*, 2016 U.S. Dist. LEXIS 166329, at *13. Therefore, the Court finds Plaintiffs here have satisfied Article III's injury in fact requirement.

### 2.    Causal Connection

MBUSA argues Plaintiffs failed to demonstrate an Article III "causal connection" between the alleged defect and the harm because Plaintiffs' "vague allegations regarding an undefined alleged defect do not plausibly establish that such a defect even exists[.]" (ECF No. 8-1 at 29.)

Causation for standing purposes requires a plaintiff demonstrate an injury "fairly . . . trace[able] to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (alteration in original)

(quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). "If the injury-in-fact prong focuses on *whether* the plaintiff suffered harm, then the traceability prong focuses on *who* inflicted that harm." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009). "This causal connection need not be as close as the proximate causation needed to succeed on the merits of a tort claim." *Id.* (citing *Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3d Cir. 1990)).

The Amended Complaint alleges that two of the three times Scattaglia's 450 GLE was towed to the dealership because it "died," the service department staff told him the 48-volt battery caused the problem. (*Id.* at ¶¶ 72, 74–75.) The Amended Complaint further claims MBUSA issued TSBs referring to "no-start" issues and problems with the 48-volt battery. (*Id.* at 11, ¶¶ 38–42.) These allegations are sufficient to demonstrate at the pleading stage MBUSA is connected to the harm Plaintiffs claim to have suffered.

For the above reasons, the Court concludes Plaintiffs have Article III standing.

**B.    NJLL**

To obtain relief under the NJLL, a plaintiff must (1) report a nonconformity within "the first 24,000 miles of operation or during the period of two years following the date of original delivery," *see* N.J. Stat. Ann. § 56:12-31, and (2) show "the manufacturer or its dealer or distributor [was] unable to repair or correct [the] nonconformity within a reasonable time." N.J. Stat. Ann. § 56:12-32(a); *see Suber v. Chrysler Corp.*, 104 F.3d 578, 584 (3d Cir. 1997). The parties do not contest satisfaction of the first requirement. They disagree as to whether the Amended Complaint satisfies the second requirement to state a claim under the NJLL.

The NJLL provides a rebuttable presumption of irreparability within a reasonable time if, within the first 24,000 miles of operation or during two years following the date of the motor

vehicle's original delivery to the consumer, whichever is earlier, one of the following occurs: (1) substantially the same nonconformity has been subject to repair three or more times by the manufacturer or its dealer and the nonconformity continues to exist; (2) the vehicle is out of service due to repair for one or more nonconformities for a cumulative total of 20 or more calendar days since the original delivery of the motor vehicle and a nonconformity continues to exist; or (3) a nonconformity that is likely to cause death or serious bodily injury if the vehicle is driven has been subject to examination or repair at least once by the manufacturer or its dealer and the nonconformity continues to exist. N.J. Stat. Ann. § 56:12-33. "In other words, a consumer can meet her burden of producing evidence of the manufacturer's inability to repair within a reasonable time by producing evidence that the nonconformity 'continues to exist' after the specified number of repairs or time out of service." *DiVigenze v. Chrysler Corp.*, 785 A.2d 37, 43 (N.J. Super. Ct. App. Div. 2001).

MBUSA argues Plaintiffs' NJLL claim should be dismissed because it is merely conclusory recitations of the statute. (ECF No. 8-1 at 26.) MBUSA further contends the Amended Complaint does not allege Scattaglia's vehicle experienced any issues after the third repair. (*Id.* at 27.) Plaintiffs argue to state a claim, they need only plead the manufacturer failed to fix the vehicle in a reasonable period of time.[2] (ECF No. 16 at 3–4.) They contend they need not plead continuing problems because they did not plead the statutory presumption. (*Id.*) Plaintiffs are correct it is not

---

[2] Plaintiffs' opposition includes a Certification by Jerry Scattaglia ("Scattaglia Certification") and references to repair attempts made to Scattaglia's vehicle after the Amended Complaint was filed. (ECF No. 16 at 4; ECF No. 16-1.) The Court does not consider the exhibits annexed to the Scattaglia Certification nor the allegations regarding recent repairs because they were not raised in the Amended Complaint. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.")

required they plead a nonconformity continues to exist to state a claim under the NJLL. *See Saraj v. Jaguar Land Rover N. Am., LLC*, Civ. A. No. 11-4510, 2012 U.S. Dist. LEXIS 199379, at *5 (D.N.J. Oct. 11, 2012); *DiVigenze*, 785 A.2d at 44. The consequence of failing to plead the nonconformity continues to exist is not dismissal; rather, such precludes the plaintiff's ability to take advantage of the statutory presumption, which Plaintiffs here do not seek to do. *DiVigenze*, 785 A.2d at 44. The Amended Complaint alleges Scattaglia was deprived of his vehicle for a total of 47 days. Whether this length of time is reasonable for an NJLL claim is a question for the trier of fact.[3] *Michael Agatone & Jag Heating v. FCA US LLC*, Civ. A. No. 405-17, 2018 N.J. Super. Unpub. LEXIS 6061, *17 (N.J. Super. Ct. Law Div. Mar. 6, 2018) (observing "reasonableness" under the NJLL "is usually an issue left for determination by the trier of fact"). For these reasons, MBUSA's motion to dismiss Count 1, violations of the NJLL, is **DENIED**.

### C.      NJCFA

A *prima facie* NJCFA claim requires showing: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the conduct and the loss. *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007). "Claims under the CFA are required to meet the particularity requirement of Fed. R. Civ. P. 9(b)." *Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F. Supp. 2d 707, 709 (D.N.J. 2010) (internal citations omitted). Rule 9(b) "requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)

---

[3] When a nonconformity continues to exist and a vehicle is out of service for a cumulative total of 20 or more calendar days, the repair time is presumed to have been unreasonable under the NJLL. N.J. Stat. Ann. § 56:12-33. This language suggests that in the absence of a nonconformity, a trier of fact may conclude 47 days is unreasonable.

(quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (quoted in *Burlington Coat Factory*, 114 F.3d at 1422)).

### 1.      Unlawful Conduct

The Amended Complaint alleges MBUSA violated the NJCFA by affirmatively failing to disclose the defect to Plaintiffs pre-sale. (ECF No. 1-2 at 55, ¶ 238.) MBUSA argues the NJCFA claim should be dismissed for failure to allege MBUSA was aware of the purported defects prior to Plaintiffs' purchase. (ECF No. 8-1 at 6.) It asserts the TSBs and the posts allegedly written by consumers on online vehicle forums are insufficient to impute knowledge and intent to deceive. (*Id.* at 7–11.) MBUSA contends Plaintiffs have not identified the defect, only its effects, which is insufficient to state a claim. (*Id.* at 11.) It further asserts Plaintiffs have not alleged facts demonstrating MBUSA was under a duty to disclose. (*Id.* at 14–15.) MBUSA also contends Plaintiffs failed to allege the intent to defraud necessary for an NJCFA claim. (*Id.* at 16–17.)

Plaintiffs contend the online consumer posts indicated the vehicles were brought to the dealerships for repair and, consistent with the warranty practices of other car companies, the repairs would have been reported to MBUSA. (ECF No. 16 at 6, 8.) Plaintiffs also argue the approximately twenty 2020 450 GLE vehicles listed on the DCA's "lemon" list were repurchased by MBUSA, endowing MBUSA with information regarding the defect. (*Id.* at 6–7.) They add the TSBs, taken with the other information, are sufficient for pleading knowledge. (*Id.* at 7–8.)

Section 2 of the NJCFA prohibits:

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . .

15

N.J. Stat. Ann. § 56:8-2. "Proof of any one of those acts or omissions or of a violation of a regulation will be sufficient to establish unlawful conduct under the Act." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (1994). "[C]ourts have derived three broad categories of unlawful conduct: affirmative acts, knowing omissions, and regulatory violations." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J. 2012) (citing *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (citing *Cox*, 647 A.2d at 462)).

To state a NJCFA claim based on an omission, the plaintiff must show the defendant intended to deceive. *See Sarlo v. Wells Fargo Bank, N.A.*, 175 F. Supp. 3d 412, 426 (D.N.J. 2015) (explaining that "an omission or failure to disclose a material fact, if accompanied by knowledge and intent" is actionable under the NJCFA); *Cox*, 647 A.2d at 462 ("[W]hen the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud.").

The Court concludes Plaintiffs failed to sufficiently plead an actionable omission under the NJCFA. In their opposition, Plaintiffs ask the Court to infer the three categories of information regarding a "no-start" defect made their way up to MBUSA, but the Amended Complaint lacks the particulars about the purported fraudulent omission and therefore fails to state MBUSA had the requisite knowledge, intent, and duty to disclose necessary to state an NJCFA claim. *See Glass v. BMW of N. Am., LLC*, Civ. A. No. 10-5259, 2011 U.S. Dist. LEXIS 149199, at *25 (D.N.J. Dec. 29, 2011) (finding the plaintiff's claim relating to alleged omissions fell short of meeting Rule 9(b)'s heightened pleading requirements where she did not specifically allege: (1) who at the car company possessed knowledge of a power steering defect; (2) when or how the decision was made to conceal the defect from consumers; (3) that all, or even substantially all, MINI Cooper vehicles

16

had the defect; and (4) that the car company knew that the defect was certain to cause the power steering to fail). Accordingly, Plaintiffs have not adequately pled an actionable omission.

### 2.    Ascertainable Loss

MBUSA contends Plaintiffs do not sufficiently allege an ascertainable loss. (ECF No. 8-1 at 11.) Plaintiffs argue they pleaded a diminution in the vehicles' value. (ECF No. 16 at 20–24.) They argue the allegations of potential costs associated with the defect, such as repair costs and alternative transportation costs, also sufficiently establish an ascertainable loss. (*Id.*)

"The CFA does not define what constitutes an 'ascertainable loss,' and there is no legislative history 'that sheds direct light on those words.'" *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 361 (D.N.J. 2006) (citing *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)). "The New Jersey Supreme Court has instructed, 'To give effect to the legislative language describing the requisite loss for private standing under the CFA, . . . a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss.'" *Id.* (citing *Thiedemann*, 872 A.2d at 792). "'The certainty implicit in the concept of an "ascertainable" loss is that it is quantifiable or measurable,' and in order to raise a genuine dispute, 'the plaintiff must proffer evidence of loss that is not hypothetical or illusory.'" *Id.* (citing *Thiedemann*, 872 A.2d at 792–93). "In cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages." *Thiedemann*, 872 A.2d at 792.

Allegations the vehicles are worth less because of a defect satisfies the ascertainable loss element for stating a claim since such a loss is quantifiable. *See Bang*, 2016 U.S. Dist. LEXIS 166329, at *17 (finding the plaintiffs adequately pleaded ascertainable loss because they alleged

their vehicles are worth less as a result of the vehicles' purported defects); *Marcus v. BMW of North Am.*, Civ. A. No. 08-5859, 2010 U.S. Dist. LEXIS 122908, at *33 (D.N.J. Nov. 19, 2010) (finding ascertainable loss adequately pleaded where the plaintiffs "got less than what they expected" despite being provided free replacement parts), *rev'd on other grounds, Marcus v. BMW of North Am.*, 687 F.3d 583 (3d Cir. 2012) (citing *Int'l Union of Operating Eng'rs Loc. # 68 Welfare Fund*, 894 A.2d at 1145). Accordingly, Plaintiffs have adequately pled an ascertainable loss.

### 3.   Regulatory Violations

The Amended Complaint alleges the NJLL requires MBUSA to certify to the DCA the existence of any inherent design defect common to all vehicles of a particular model or make and asserts a violation of the CFA for failure to report an "inherent design defect common to all motor vehicles of a particular model or make" pursuant to the NJLL. (ECF No. 1-2 at 22–23, 56 ¶¶ 89–91, 240.) This "regulation violation" conduct falls under the third category of unlawful conduct. *See Mickens*, 900 F. Supp. 2d at 437 (finding the plaintiff's allegations the defendant violated the NJCFA by failing to certify to the DCA the presence of a defect as required by the NJLL "is CFA unlawful conduct of the 'regulation violation' variety").

MBUSA contends Plaintiffs fail to state an NJCFA regulation violation because they did not claim a causal connection between the alleged statutory disclosure violations and their alleged injury. (ECF No. 8-1 at 17–18.) Plaintiffs do not address this argument in their opposition.

MBUSA relies primarily on *Mickens*. In *Mickens,* the district court dismissed the plaintiff's NJCFA claim for failure to plead the causation element. 900 F. Supp. 2d at 437–41. The district court reasoned the plaintiff had not plausibly alleged the defendant's reporting of a defect under the NJLL would have resulted in any remedial measure being taken by the DCA or that such

reporting would have impacted the plaintiff's decision to purchase his vehicle. *Id.* at 439. The Court finds the Amended Complaint similarly lacks the requisite nexus between MBUSA's failure to report and the injury Plaintiffs allege. There are no allegations Plaintiffs took steps to "verify the existence, or not, of any report to the [DCA]" or "determine whether the [DCA] had issued any warning or taken any action" before purchasing their vehicles. *Id.* at 438. Similarly, there are no facts alleged in the Amended Complaint "to establish that the [DCA] has the power to take any of the hypothetical remedial actions that he alleges or, having that power, would exercise it." *Id.* at 439. Further, MBUSA's failure to report the defect to the DCA, the regulation violation alleged here, presupposes the Amended Complaint sufficiently alleges MBUSA's knowledge of the defect, which it does not. *See* Section II.C.1. Accordingly, Plaintiffs have not adequately pled a regulatory violation.

Although Plaintiffs adequately pled an ascertainable loss, they failed to plead an actionable omission or a regulatory violation. Therefore, MBUSA's motion to dismiss Count 2, violations of the NJCFA, is **GRANTED**.

### D.    Breach of Express Warranty

MBUSA argues Plaintiffs' express warranty claim fails on three grounds.

First, MBUSA contends Plaintiffs' allegations amount to a design defect claim rather than a defect in material or workmanship, and a design defect claim is expressly excluded from the written warranty. (ECF No. 8-1 at 18–20.) In response, Plaintiffs argue identification of the type of defect—design, materials, or workmanship—is not necessary at the pleading stage; rather, they need only plead the failure of the goods to perform as warranted. (ECF No. 16 at 28–33.) Plaintiffs note the dealer never denied any of Scattaglia's repairs on the basis the malfunctions were a design defect. Instead, the dealer repaired the vehicle at no charge to Scattaglia under the warranty.

According to Plaintiffs, MBUSA is estopped from claiming the defect is not covered by warranty. In reply, MBUSA argues the Amended Complaint specifically refers to the defect as a design defect. (ECF No. 17 at 9.)

Second, MBUSA contends Plaintiffs do not sufficiently plead a breach of the written warranty because they allege the selling dealer repaired Scattaglia's vehicle each of the three occasions he sought repair at no charge to him. (ECF No. 8-1 at 20–21.) In response, Plaintiffs argue MBUSA, via its agents at the franchise dealership, failed to fix the vehicle in a reasonable time, and the vehicle's value has been impaired. (ECF No. 16 at 24.)

Third, MBUSA argues the Amended Complaint fails to allege Plaintiffs complied with the notice requirements required by both the written warranty and state law. (ECF No. 8-1 at 21–22.) In response, Plaintiffs argue their repeat complaints to the dealer were sufficient notice to MBUSA, the statutory notice requirement does not require a writing,[4] the sufficiency of any notice is a jury question, the written notice requirement is unenforceable, and failure to provide notice may be cured via amendment. (ECF No. 16 at 26–28.)

To establish a breach of express warranty claim under New Jersey law, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico*, 507 F.3d at 203.

---

[4] Plaintiffs also argue Scattaglia repeatedly wrote to and spoke with MBUSA's representative, thereby satisfying any statutory notice requirement, and cite to the Scattaglia Certification. For the reasons discussed in footnote 1 above, the Court does not consider these facts in connection with MBUSA's motion to dismiss. *Mayer*, 605 F.3d at 230.

Plaintiffs' express warranty claim fails as a matter of law because they have failed to adequately allege a breach of contract. MBUSA's New Vehicle Limited Warranty,[5] the contract upon which Plaintiffs' claim is premised, states MBUSA "will make any repairs or replacements necessary to correct defects in material or workmanship, but not design, arising during the warranty period." (Def.'s Opp. Ex. 1 (ECF No. 8-2) at 11.) The warranty also states "[t]o the extent allowed or not prohibited by applicable law, MBUSA requires that you first provide us with direct written notification of any alleged unrepaired defect or malfunction, or any other dissatisfaction you have experienced with your vehicle so that we have the opportunity to cure the problem or dissatisfaction ourselves." (*Id.* at 86.) Therefore, the warranty's plain language expressly excludes design defects and requires written notification to MBUSA.

Here, the Amended Complaint does not state Plaintiffs provided MBUSA with the requisite notice. Rather, the Amended Complaint states "plaintiffs provided defendants with a letter notifying defendants that plaintiffs revoked acceptance of the vehicle and demanded a refund from defendants pursuant to the UCC and/or MMWA. Exhibit A." (ECF No. 1-2 at 60, ¶ 266.) Exhibit A is a "Repair History Summary" for the repairs to Scattaglia's vehicle, not a letter notification to MBUSA of the purported defect. (*See id.* at 70–75 of 160.) Plaintiffs have therefore failed to plead they complied with requisite notice requirements. Further, the Amended Complaint specifically states the vehicle's "problems were an inherent design defect of the vehicle" (ECF No. 1-2 at 23, ¶ 91), which places the claim outside of warranty coverage. *See Cooper v. Samsung Elecs. Am.,*

---

[5] Although not annexed to the Amended Complaint, the Court considers the New Vehicle Limited Warranty submitted by MBUSA with its motion to dismiss because the Court considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. The Amended Complaint expressly refers to MBUSA's new limited vehicle warranty as the basis for its express warranty claims. (*See* ECF No. 1-2 at 2, 58, ¶¶ J, 255.)

*Inc.*, 374 F. App'x 250, 253 (3d Cir. 2010) (affirming dismissal of express warranty claim on motion to dismiss where the plaintiff did not provide requisite notice and alleged a design defect not covered by the warranty). Accordingly, MBUSA's motion to dismiss Plaintiffs' express warranty claim in Count 3 is **GRANTED**.

### E.     Breach of Implied Warranty

MBUSA argues Plaintiffs' implied warranty claim should also be dismissed because Scattaglia does not allege he has stopped using his vehicle for transportation nor allege his vehicle has required any further repair following the third repair. (ECF No. 8-1 at 22–24.) Plaintiffs contend the vehicle is not of merchantable quality because it does not provide reliable transportation to its purchaser for use on the roadways. (ECF No. 16 at 25.)

The Uniform Commercial Code, as adopted by New Jersey, provides "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J. Stat. Ann. § 12A:2-314(1). To be merchantable, the goods must be "fit for the ordinary purposes for which such goods are used." N.J. Stat. Ann. § 12A:2-314(2)(c); *see Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69 (1960) (stating warranty "simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold"). "For an automobile, the implied warranty of merchantability is breached only when a defect 'renders the vehicle unfit for its ordinary purpose of providing transportation for its owner.'" *Sheris v. Nissan N. Am., Inc.*, Civ. A. No. 07-2516, 2008 U.S. Dist. LEXIS 43664, at *16 (D.N.J. June 2, 2008) (quoting *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, Civ. A. Nos. 96-3125, 96-1814, 96-3198, 1997 U.S. Dist. LEXIS 24064, at *78 (D.N.J. Sept. 30, 1997)).

Accepting Plaintiffs' allegations on this motion to dismiss as true, the vehicles suffer from a "no-start" problem, which requires the vehicles to be towed for repairs and renders them

unreliable because Plaintiffs may be in a situation where the vehicle fails to start and leaves the Plaintiffs stranded. (ECF No. 1-2 at 19, ¶¶ 83–85.) The cases cited by MBUSA in support of dismissal because the vehicle continues to perform after the repairs are not applicable. In those cases, the vehicles had been driven for several years and the defect manifested after the expiration of the express warranty period. *See Brown v. Hyundai Motor Am.*, Civ. A. No. 18-11249, 2019 U.S. Dist. LEXIS 148305, at *14 (D.N.J. Aug. 30, 2019) (dismissing implied warranty claim where the plaintiff had driven her vehicle for over four years and roughly 64,000 miles, and the defect manifested after the expiration of the New Vehicle Limited Warranty Period); *Sheris*, 2008 U.S. Dist. LEXIS 43664, at *15 (dismissing breach of implied warranty claim where the plaintiff drove vehicle for over twenty thousand miles and for about two years); *Merkin v. Honda N. Am., Inc.*, Civ. A. No. 17-03625, 2017 U.S. Dist. LEXIS 187233, at *2, 15 (D.N.J. Nov. 9, 2017) (dismissing implied warranty claim where alleged defect discovered after the term of the warranty and after the plaintiff had driven over forty thousand miles).[6]

Here, Scattaglia's vehicle purportedly malfunctioned three times in a six-month period, Plaintiffs allege a risk of being stranded due to the malfunction, and the parties do not dispute these problems arose during the vehicle's warranty period. (ECF No. 1-2 at 15, 17–18 ¶¶ 56, 69–75.)

---

[6] MBUSA also cites to *Adams v. Peter Tramontin Motor Sales, Inc.*, 126 A.2d 358, 364 (N.J. Super. Ct. App. Div. 1956). The Court finds *Adams* is also inapplicable. In that case, the court concluded the vehicle "possessed no remarkable defect" and required nothing more than "relatively minor adjustments to put it in good working order. The motor had to be adjusted, loose elements tightened, the locks corrected, the dome light fixed, and a rumbling noise eliminated." *Id.* Here, Plaintiffs allege when the vehicle does not start, it needs to be towed, and puts them at risk of being stranded.

23

The Court finds Plaintiffs have stated a claim for breach of implied warranty. *See Bang*, 2016 U.S. Dist. LEXIS 166329, at *21–22 (denying the defendant's motion to dismiss implied warranty claim where the plaintiffs alleged "severe mechanical failures, including (1) vehicle break down one day after purchase, (2) a 'drivetrain malfunction' that resulted in reduced acceleration and dynamic stability control malfunction, and (3) vehicle failure when a battery could not accept a full charge"). MBUSA's motion to dismiss Plaintiffs' implied warranty claim in Count 4 is **DENIED**.

### F.   MMWA

The MMWA, 15 U.S.C. § 2301 *et seq.*, provides a right of action for consumers who are damaged by a supplier, warrantor, or service contractor's failure to comply with the terms of a written or implied warranty. 15 U.S.C. § 2310(d)(1). A plaintiff's MMWA claim relies on her establishing a claim under an applicable state law. *Cooper v. Samsung Elecs. Am., Inc.*, Civ. A. No. 07-3853, 2008 U.S. Dist. LEXIS 75810, at *18 (D.N.J. Sep. 29, 2008), *aff'd*, 374 F. App'x 250 (3d Cir. 2010) (citations omitted).

Here, Plaintiffs have not stated a claim for breach of express warranty but have stated a claim for implied warranty. Therefore, MBUSA's motion to dismiss Plaintiff's MMWA in Count 3 as to their express warranty claim is **GRANTED,** and their motion to dismiss Count 4 as to their implied warranty claim is **DENIED**.

### IV.   CONCLUSION

For the reasons set forth above, MBUSA's Motion to Dismiss (ECF No. 8) is **GRANTED IN PART** and **DENIED IN PART**.  MBUSA's Motion to Dismiss Count 1 (violations of the NJLL) and Count 4 (breach of implied warranty and violations of the MMWA) is **DENIED**. MBUSA's Motion to Dismiss Count 2 (violations of the NJCFA) and Count 3 (breach of express

24

warranty and violations of the MMWA) is **GRANTED**. Count 2 and Count 3 of the Amended Complaint (ECF No. 1-2) are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs are afforded thirty (30) days from their receipt of the Order accompanying this Opinion to file a second amended complaint that cures the deficiencies as set forth above.[7] If Plaintiffs do not file a second amended complaint in that time, Counts 2 and 3 will be dismissed with prejudice. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  December 15, 2021

---

[7] It is fundamental Federal Rule of Civil Procedure 8(a) requires a valid complaint contain only a "short and plain statement of the claim" showing entitlement to relief. "Notably, the Rule does not require lengthy pleadings with citations to legal authority." *Catanzaro v. Cottone*, 228 F. App'x 164, 166 (3d Cir. 2007). Because Counts 2 and 3 are dismissed without prejudice, Plaintiffs have an opportunity to replead these claims in a second amended complaint. Plaintiffs are reminded of their obligations under Rule 8(a).